## CONFERENCE OF STUDIO UNIONS et al. v. LOEW'S INC. et al.

### No. 12816.

United States Court of Appeals, Ninth Circuit.

Nov. 2, 1951.

Writ of Certiorari Denied Jan. 28, 1952.

See 72 S.Ct. 367.

Kenny & Cohn, Los Angeles, Cal., Todd & Todd, San Francisco, Cal., and George E. Bodle, Los Angeles, Cal., for appellants.

Wright & Garrett, Harold F. Collins, O'Melveny & Myers, Homer I. Mitchell and William W. Alsup, all of Los Angeles, Cal., for appellees Loew's Inc., et al.

Bodkin, Breslin & Luddy, and Michael G. Luddy, all of Los Angeles, Cal., for appellees Int. Alliance, et al.

Before HEALY, ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

The trial Court entered judgment on the pleadings. The complaint purports to allege a conspiracy in restraint of trade and prays for treble damages and an injunction under the anti-trust laws. 15 U.S.C.A. §§ 15, 26.

Appellants may be considered in two general classes. One group is composed of the Conference of Studio Unions, an association of certain labor unions in the motion picture industry, and its member unions. The second group consists of certain individuals, members of the appellant unions. Appellees also may be so divided. One group consists of a number of the large motion picture companies, traditionally known as the Majors, and their responsible officers. The other, the labor appellees, includes the International Association of Theatrical Stage Employees and Moving Picture Operators of the United States and Canada, Local 44 of that union, and the responsible officers of the International and Local. For convenience the labor appellees will hereafter be referred to as the I. A. T. S. E.

Appellee Majors leads, to a very large degree, in the production of motion pictures in Los Angeles County, and employs by far the greater number of personnel engaged in motion picture production in said county. A comparatively small number of inexpensive films is produced by other motion picture companies who are competitors of the majors. This competing group is known as the Independents.

The complaint alleges that the appellees "* * * combined and agreed each with the other for the purpose of destroying the Conference and the member unions, and for the further purpose of eliminating as competitors the motion picture production companies herein described as the Independents." As part of the conspiracy the appellees are alleged to have agreed that to do the work customarily performed for the Majors by members of the Conference unions the Majors would thereafter employ only members of locals of the I. A. T. S. E. or persons who had procured the written consent of a local of the I. A. T. S. E. In return for this employment preference the I. A. T. S. E. is alleged to have agreed to order its locals to furnish their most skilled members to render services to the Majors exclusively and to refrain from furnishing skilled members to any of the Independents unless and until all of the Majors had a full supply of employees and that it would order and require its locals to furnish employees in categories indispensable to the production of motion pictures to the Independents only at rates and under conditions higher and more onerous to the employer than the rates and conditions at which I. A. T. S. E. would furnish such employees to the Majors. The labor turnover was expected to result in a scarcity

of new motion pictures, and to avoid giving an advantage to an individual Major during this interim period it is alleged that the Majors agreed to curtail production and distribution of motion pictures; to refrain from releasing motion pictures previously produced but theretofore unreleased; to exact from exhibitors agreements requiring the latter to run motion pictures for longer periods of time than had been the custom prior thereto; to increase the length of the run of any picture produced by the Majors in theaters controlled or owned by them; to prepare for reissue motion pictures previously exploited and exhibited and to persuade distributors and exhibitors to accept reissued motion pictures in lieu of motion pictures not previously exhibited. In pursuance of the agreement the following overt acts are alleged: The Majors have hoarded new pictures; have exacted agreements from distributors for longer runs and in their own theaters have run pictures longer; have forced reissues on distributors and the public and have curtailed the production of new pictures. In addition it is alleged the Majors have discharged all carpenters and painters members of the Conference unions and have broken off labor relations with the other Conference unions. The I. A. T. S. E., according to the complaint, has supplied the Majors with skilled help and has required the Independents to accept such laborers as remained and to employ them at higher rates of pay than charged the Majors. The complaint further charged that appellants have suffered damage in that, the individual appellants have lost wages by reason of their dismissal and the Majors' refusal to reemploy them; the Conference has lost monthly revenue by reason of the withdrawal of certain of its member unions and has expended moneys for the purpose of endeavoring to reach agreement with the Majors for the rehiring of members of member unions; and, member unions of the Conference have expended moneys for the purpose of maintaining membership and in endeavoring to reach agreement with the Majors for the rehiring of members. As grounds for equitable relief it is alleged that irreparable injury will be caused the appellants in that member unions will be compelled to withdraw from the Conference and the Conference will be destroyed; members of its member unions will be compelled to withdraw from their respective unions and the unions will be destroyed; members of its member unions will forever lose their opportunity for reemployment in the motion picture industry and will be compelled to seek employment in industries to which they are strangers.

The complaint was answered by a general denial and several affirmative defenses which will hereafter more fully appear. The motion for judgment on the pleadings was granted on the ground that appellants' claims did not arise from injury to "business or property" within the meaning of 15 U.S.C.A. § 15. Appellees urge here that the conspiracy and alleged effectuating acts are not forbidden by the anti-trust laws; or that, the conspiracy is divisible and severable as to that which is forbidden by the anti-trust laws and therefore is legal with respect to appellants; that even though a conspiracy in restraint of trade is alleged the damages sustained by appellants did not result from any restraint of commercial competition; and, that the acts which are alleged to have injured appellants are unfair labor practices, and, therefore, the National Labor Relations Board has exclusive jurisdiction of the case.

In the case of Schatte v. International Alliance of Theatrical Stage Employees, etc., 9 Cir., 1950, 182 F.2d 158, one of the member unions of the Conference brought an action making the same parties defendants in that action who are appellees in this, seeking treble damages under the anti-trust laws. The cause of action in the Schatte case was bottomed upon the premise that the Majors had combined with I. A. T. S. E. to force the Independents to hire I. A. T. S. E. members; that members of the I. A. T. S. E. were less efficient workers than members of the Conference Union, and that the purpose and effect of the agreement was to increase production costs to the Independents and thus ultimately drive them out of business. We held in that case that no violation of the anti-trust laws had been shown because no restraint on "commercial competition" had

been alleged, no more being alleged than an agreement to compel the Independents to adopt certain employment policies. In the complaint in the instant case an attempt is made to allege a restraint on commercial competition by showing wage rate discrimination against the Independents and the agreement entered into among the Majors to restrict production. In reference to the complaint in the Schatte case we said that in the event the alleged conspiracy be considered illegal no recovery could be had because there was no allegation of "* * * damage * * * which stems from a conspiracy in violation of anti-trust laws * * *. The loss of their rights of employment is not a result of any lessening of commercial competition among the studios." 182 F.2d 158, 167. We think the same observation holds true with respect to the allegations of the complaint in the instant case.

The appellants' connection with the alleged illegal conspiracy is not such as would bring them within the contemplation of the anti-trust law. The entire import of the alleged conspiracy, insofar as competitive conditions are concerned, is the attempt to destroy the Independents. Any restraint on commercial competition would occur in the production of motion pictures and we fail to see how the appellants are in a position to complain about that situation. They are not in the business of producing motion pictures; they do not exhibit motion pictures; they neither compete with the Majors nor purchase from them. In fact, they are not employees of the companies whom it is alleged the appellees intend to destroy. The damage alleged to have been suffered by appellants does not flow from any injury to the competitive situation of the motion picture industry, that is, their injury has not arisen from the acts allegedly perpetrated against the Independents.

It has been held that shareholders, creditors, directors and officers of corporations injured by monopolistic practices of competitors cannot recover their individual losses.[1] The reasoning of the courts in the cases cited in Note 1 is that the conspiracy to restrain competition was directed at the corporation and the damage suffered by the plaintiff was merely incidental. So, in the present case, insofar as the conspiracy was to restrain trade by destroying competitors it was directed at the Independents, and the alleged damage the appellants suffered therefrom was incidental to the accomplishment of the illegal object.

Appellants urge that the acts which allegedly damaged them should not be looked at in isolation but must be reviewed in the context of and, therefore, colored by, the illegal conspiracy. Such a contention, while of course true as a general proposition, does not help them here. The cited cases (see Note 1) illustrate the rule that persons incidentally injured by a conspiracy cannot sue. In those cases the acts which injured the plaintiffs resulted in or tended to bring about the restraint of trade contemplated by the conspiracy; but that was not considered the sole test for liability. The fact that their injury was incidental was controlling. Not one of the acts alleged to have caused injury to the appellants effectuated or tended to create a restraint on commercial competition in the motion picture industry. Cf. Peterson v. Borden Co., 7 Cir., 1931, 50 F.2d 644. A conspiracy may have many purposes and objects; the conspirators may perform an almost infinite variety of acts in furtherance of the conspiracy; but, in order to state a cause of action under the anti-trust laws a plaintiff must show more than that one purpose of the conspiracy was a restraint of trade and that an act has been committed which harms him. He must show that he is

---

1. Loeb v. Eastman Kodak Co., 3 Cir., 1910, 183 F. 704; Gerli v. Silk Ass'n, of America, D.C.S.D.N.Y.1929, 36 F.2d 959; Corey v. Boston Ice Co., D.C. Mass.1913, 207 F. 465.

Nor can a landlord who lost a tenant, or a regularly retained lawyer whose services are no longer necessary, bring suit. Westmoreland Asbestos Co. v. Johns-Manville Corp., D.C.S.D.N.Y.1939, 30 F.Supp. 389; affirmed on opinion in 2 Cir., 1940, 113 F.2d 114; see United Cooper Securities Co. v. Amalgamated Copper Co., 2 Cir., 1916, 232 F. 574, 577.

within that area of the economy which is endangered by a breakdown of competitive conditions in a particular industry. Otherwise he is not injured "by reason" of anything forbidden in the anti-trust laws.

Such a construction is in accordance with the basic and underlying purposes of the anti-trust laws to preserve competition and to protect the consumer. Recovery and damages under the anti-trust law is available to those who have been directly injured by the lessening of competition and withheld from those who seek the windfall of treble damages because of incidental harm.

Judgment affirmed.