John CAMPO

v.

The NATIONAL FOOTBALL LEAGUE, an unincorporated association, a/k/a The Five Smiths, Inc., et al.

Civ. A. No. 71–2971.

United States District Court, E. D. Louisiana, New Orleans Division.

Dec. 17, 1971.

Anthony C. D'Antonio, Guy Joseph D'Antonio, New Orleans, La., for plaintiff.

Ralph L. Kaskell, Jr., of Deutsch, Kerrigan & Stiles, New Orleans, La., for all defendants except Tulane University.

George A. Kimball, Jr., C. Manly Horton, Jr., of Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for Board of Administrators, Tulane Educational Fund and Tulane University.

COMISKEY, District Judge.

The above action came on for hearing on December 8, 1971, on motions for summary judgment filed by plaintiff and by all defendants, in accordance with the agreement of the parties as set forth in the Minute Entry of the Court dated November 19, 1971. From the uncontroverted statement of material facts about which there is no dispute, and documents and exhibits in support thereof, the Court now makes the following findings.

### FINDINGS OF FACT

1. The plaintiff John Campo is the owner of ⅙th of the stock in Carriage Inn, a domestic corporation organized under the laws of the State of Louisiana.

2. Carriage Inn, Inc., is the owner of Ramada Inn at 2222 Tulane Avenue, New Orleans, Louisiana.

3. Carriage Inn is the owner of stock in LaRue 90, Inc.

4. LaRue 90, Inc., is the owner of the Ramada Inn at 13600 Chef Menteur Highway, New Orleans, Louisiana.

5. The National Football League (NFL) is a non-profit association consisting of 26 member clubs which play and sponsor professional football games pursuant to the Constitution and By-laws of the National Football League, effective February 1, 1970. (NFL–Exhibit 1.)

6. Under the Constitution and By-laws, the NFL has provided for a World Championship Game (commonly called the Super Bowl Game) which is played under the supervision, control and direction of the Commissioner of the NFL. (NFL Exhibit 1, Article XXII, Section 22.1).

7. Article X of the Constitution and By-laws provides as follows with respect to the Super Bowl Game:

"Championship Games

10.5 The sale of radio and television and film rights for the World and Conference Championship Games shall be under the sole jurisdiction of the Commissioner and be subject to the provisions of Article X.

"In the World and Conference Championship Games:

\*      \*      \*      \*      \*      \*

"(2) No television station may carry or broadcast the game if its signal is visible in the home territory (75 miles) of the home club in the city where the game is being played. The Commissioner's decision in this matter shall be final."

8. The Super Bowl Game is subject to unique management and operational considerations. No one club has any preemptive rights to any aspects of the Super Bowl; the Game is jointly owned by all 26 NFL members. Under the Constitution and By-laws, the 26 clubs have delegated to the Commissioner the responsibility for making numerous business arrangements for the Super Bowl Game, including the sale of television rights for that Game. (Rozelle affidavit.)

9. In accordance with the By-laws, the member clubs of the NFL chose New Orleans as the site of the Super Bowl Game to be played on Sunday, January 16, 1972. The Commissioner has contracted with the Columbia Broadcasting System to telecast the Game on a free home television basis except within the New Orleans area where the Game is being played. The Game will be telecast locally on a delayed basis over a New Orleans television station within New Orleans. The Super Bowl Game on January 16, 1972 is the only NFL Game scheduled to be played on that date. (Rozelle affidavit.)

10. The Commissioner's decision not to telecast the 1972 Super Bowl Game locally in New Orleans, at the time that the Game is being played, is based on Article X, Section 10.5 of the Constitution and By-laws, and on the uniform practice and custom of the NFL during the past 20 years not to telecast locally a World Championship Game nor any of the Super Bowl games.

11. Plaintiff has made no showing of possible irreparable damage and has failed to present specific evidence with respect to any claim for damages. The 1972 Super Bowl will take place on but one day, Sunday, January 16, 1972. Thousands of tickets for the Game will be sold to non-residents of New Orleans. The greater New Orleans Hotel-Motel Association estimates that some twenty to twenty-five thousand rooms will be occupied by visitors to the New Orleans Area for the Game. The total number of rooms in New Orleans available for such visitors is approximately fifteen thousand. The Hotel-Motel Association will direct to Ramada Inn requests for reservations by people who will hold Super Bowl tickets that will more than fill Ramada Inn. Plaintiff has refused to accept such reservations from either the

Hotel-Motel Association or the Greater New Orleans Tourist and Convention Commission. Plaintiff has also refused to accept referrals from the Ramada Inn System for the Super Bowl weekend. Plaintiff fully expects that the Ramada Inn will be completely filled with room guests for the Super Bowl weekend. Both plaintiff and the Hotel-Motel Association state that food and beverage revenue increases with increased room business. Thus, plaintiff has produced no evidence of possible irreparable damage and no concrete evidence of actual or probable damage. (Prestia and Fore affidavits; Campo Deposition pp. 28, 30, 43–44, 46–49, 109–113, 115, 118–122; Campo Deposition, 11/23/71, pp. 54–56, 78–88, 94–97; Campo Exhibits 25–28; Brown Deposition, pp. 42–45.)

12. Plaintiff has failed to show that it is representative of hotels and motels in the New Orleans area, that plaintiff's alleged claim is typical of hotels and motels in the New Orleans area and that plaintiff would fairly and adequately protect the interests of the class. In fact, it is an undisputed fact that the hotels and the motels in the New Orleans area are in conflict with plaintiff's claim. In addition, plaintiff has failed to show that it is representative of any other business in the New Orleans area. (Prestia and Fore affidavits; Campo Deposition, pp. 26–27, 88.)

13. There is no evidence that the arrangements made by the Commissioner for the telecasting of the 1972 Super Bowl Game have any effect on hotels and motels like the Ramada Inn by reason of the local blackout of the Super Bowl Game. Carriage Inn, Inc., as the owner of a motel, is not within the area of the economy which may be endangered by a break-down of any competitive conditions. Nor has it been shown that any damages to the plaintiff under the antitrust laws will result directly from the NFL practices of which plaintiff has made complaint. No competition in which the plaintiff participates has been foreclosed.

14. The Board of Administrators of the Tulane Educational Fund is merely the lessor of Tulane Stadium for the Super Bowl Game under a lease which reserves all television rights to the NFL, and said Board has no connection with any of the practices of which plaintiff complains. (NFL Exhibit 3; Tulane Exhibits 1–4)

15. The Court finds that there is no genuine issue as to any of the material facts or findings set forth above.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter in controversy. The claim herein arises under the Clayton Act, 15 U.S.C. §§ 15 and 26. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1337.

2. John Campo, individually, is without standing to sue for treble damages or for injunctive relief under the Clayton Act, 15 U.S.C. § 15 and § 26, in that he is suing only as a stockholder for injury to the business or property of the corporation Carriage Inn, Inc. It is well settled that a stockholder in a corporation as such is not injured in his business or property within the meaning of the Clayton Act merely because an unlawful conspiracy has caused injury to the business or property of the corporation as a result of which the value of its stock has been reduced. A shareholder may only recover when he has been individually injured because of relations directly between him and the wrongdoer. The injury to the stockholder must be direct and not merely consequential or derivative through the corporation. Plaintiff has made no such claim here. Rather, he brought this suit only by virtue of his ownership of stock in Carriage Inn, Inc. and because of the damage suffered by the motel owned by that corporation. Peter v. Western Newspaper Union, 200 F.2d 867, 872 (5th Cir. 1953); Martens v. Barrett, 245 F.2d 844 (5th Cir. 1957); Ash v. International Business Machines, Inc., 353 F.2d 491 (3rd Cir. 1965); Coast v. Hunt Oil Company, 96

F.Supp. 53 (W.D.La.1951), aff'd 195 F.
2d 870 (5th Cir. 1952); Former Stock-
holders of Barr Rubber Products Co. v.
McNeil Corp., 325 F.Supp. 917, 918 (N.
D.Ohio 1970), aff'd 441 F.2d 1169 (6th
Cir. 1971); Green v. Victor Talking Ma-
chine Co., 24 F.2d 378, 381 (2nd Cir.
1928).

3. Carriage Inn, Inc., as the
owner of Ramada Inn at 2222 Tulane
Avenue, New Orleans, Louisiana, is
without standing to sue under the Clay-
ton Act, 15 U.S.C. §§ 15 and 26, for ei-
ther an injunction or for treble damages
for the reason that Carriage Inn, Inc. is
not within an area of the economy that
could be endangered by a breakdown of
competitive conditions in the industry
here involved and could not be directly
or proximately injured by the lessening
of competition therein. Conference of
Stuio Unions v. Loew's Inc., 193 F.2d 51,
55 (9th Cir. 1961); Karseal Corporation
v. Richfield Oil Corporation, 221 F.2d
358 (9th Cir. 1955); Nationwide Auto
Appraiser Service, Inc. v. Association of
Casualty and Surety Companies, 382 F.
2d 925 (10th Cir. 1967); Dailey v. Qual-
ity School Plan, Inc., 380 F.2d 484 (5th
Cir. 1967).

4. Plaintiff has not shown that
it will suffer irreparable damages or
any damage whatever, and plaintiff is
not entitled to injunctive relief. 15 U.
S.C. § 26; Heron v. City and County of
Denver, Colo., 317 F.2d 309 (10th Cir.
1963); Caddy-Imler Creations, Inc. v.
Caddy, 299 F.2d 79 (9th Cir. 1962);
Daigle v. Continental Oil Co., 277 F.
Supp. 875 (W.D.La.1967).

5. Plaintiff is not representa-
tive of its class, its claim is not typical
of a class, and plaintiff would not fairly
and adequately protect the interests of
any class. Insofar as plaintiff John
Campo brings suit as a representative of
a class, he is not a real party in interest,
has no standing to sue and fails to meet
the requirements of Rule 23 of the Fed-
eral Rules of Civil Procedure. Insofar
as Carriage Inn, Inc., may seek to bring
a class action, it has also failed to meet
the requirements of Rule 23. William
Goldman Theatres, Inc. v. Paramount
Film Distributing Corp., 49 F.R.D. 35,
40 (E.D.Pa.1969); Cannon v. Texas
Gulf Sulphur Co., 47 F.R.D. 60, 62 (S.
D.N.Y.1969); Chavis v. Whitcomb, 305
F.Supp. 1359, 1363 (S.D.Ind.1969);
Richland v. Cheatham, 272 F.Supp. 148
(S.D.N.Y.1967); Dierks v. Thompson,
414 F.2d 453, 456 (1st Cir. 1969); Lo-
pez Tijerina v. Henry, 48 F.R.D. 274,
276 (D.N.M.1969).

6. Plaintiff's motion for summary
judgment is denied. The motion for
summary judgment brought by the
Board of Administrators of the Tulane
Educational Fund is granted in all re-
spects. The motion for summary judg-
ment brought by all other defendants is
also granted both as to the plaintiffs'
claims for treble damages and for in-
junctive relief, and the plaintiffs' com-
plaint and amended complaint are dis-
missed.