**Delbert C. REIBERT, Individually and on Behalf of employees of the previously existing Sinclair Oil Corporation, et al., Plaintiffs-Appellants,**

v.

**ATLANTIC RICHFIELD COMPANY and Sinclair Oil Corporation, Defendants-Appellees.**

No. 72–1283.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 11, 1972.

Decided Jan. 8, 1973.

Certiorari Denied April 16, 1973.
See 93 S.Ct. 1900.

Stan P. Doyle, Tulsa, Okl., for plaintiffs-appellants.

Otis Pratt Pearsall, New York City (Richard B. McDermott and Donald E. Hammer, Tulsa, Okl., Jerome G. Shapiro, John A. Donovan and Donald A. Bright, New York City, on the brief), for defendants-appellees.

Before PHILLIPS, HILL and HOLLOWAY, Circuit Judges.

HILL, Circuit Judge.

This is an appeal from an order by the United States District Court for the Northern District of Oklahoma granting defendants-appellees summary judgment on their motion to dismiss plaintiffs-appellants' suit for violations of Sherman Act, § 1 (15 U.S.C. § 1) and Clayton Act, § 7 (15 U.S.C. § 18).

Appellant Reibert had been employed by Sinclair since 1952. Originally employed as a draftsman, he subsequently held various jobs and was working as a research technician at the time of his termination. The circumstances surrounding his discharge began when Atlantic Richfield Company and Sinclair reached a preliminary agreement to merge. Approval by the boards of directors was forthcoming, and finally adoption by the stockholders.

The merger was temporarily halted when the Department of Justice commenced an action against Atlantic and Sinclair in the United States District Court for the Southern District of New York challenging the merger under Section 7 of the Clayton Act. The complaint charged the merger might substantially lessen competition or create a monopoly in the selling of gas in four geographic regions. Ultimately Sinclair was forced to divest itself of all marketing properties in the northeastern and southeastern states.

Once the court accepted Sinclair's divestiture, the merger was consummated. Shortly thereafter, Reibert was discharged. No evidence has been submitted intimating that appellant's discharge was for any reason other than the duplication in jobs occasioned by the merger. The merger's reverberations caused 4000 employees to be terminated or forced into early retirement within one year of consolidation. Appellant filed this class action on behalf of all employees and the employment agencies which regularly had provided temporary help to Atlantic Richfield and Sinclair.

Appellant alleges, inter alia, that Atlantic and Sinclair entered into a mutual merger agreement which is in restraint of trade, in violation of Section 1 of the Sherman Act. Atlantic's acquisition of Sinclair also violated Section 7 of the Clayton Act in that it might substantially lessen competition or tend to create a monopoly in the petroleum industry. Treble damages were sought under Section 4 of the Clayton Act (15 U.S.C. § 15) and injunctive relief under Section 16 (15 U.S.C. § 26) of the same Act.

On December 1, 1969, appellant filed a motion for summary judgment seeking

to dispose of certain legal issues, including standing of employees to sue. The trial judge denied this motion. Atlantic subsequently filed a motion for summary judgment on the issue of standing which was sustained on grounds that: (1) appellant's injury, if any, was too indirect to be actionable under Clayton Act, § 4; and (2) appellant was not injured in his business or property by anything forbidden by antitrust laws.

Numerous issues were raised by appellant on appeal, but our decision that he lacks standing is dispositive; therefore no attempt will be made to answer the other issues.

Appellant asserts that employees have standing to sue whenever the effect of an illegal merger is to injure them. The issue boils down to whether or not antitrust laws are directed toward employees injured by an alleged illegal merger.[1]

"Directness of injury" has been a phrase confronting the courts on numerous occasions. For example, our own court, in Nationwide Auto Appraiser Service Co. v. Association of C. & S. Co., 382 F.2d 925 (10th Cir. 1967), determined that a franchiser complaining of an antitrust combination directed at its franchisee suffered only "indirect" or "remote" damages. See also Billy Baxter, Inc. v. Coca-Cola Co., 431 F.2d 183 (2d Cir. 1970), cert. denied, 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826. A non-operating landlord of theaters allegedly used by its tenant and various motion picture distributors and exhibitors in furtherance of an antitrust conspiracy to restrain the trade of competing distributors and exhibitors has been denied standing for failure to come within the "target area" of the alleged conspiracy. Calderone Enter. Corp. v. United States Theatre Circuit, 454 F.2d 1292 (2d Cir. 1971). Standing has been denied a patent owner charging derivative

harm from a conspiracy directed against its licensees. Productive Inventions, Inc. v. Trico Products Corp., 224 F.2d 678 (2d Cir. 1955), cert. denied, 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (1956). Stockholders of a corporation are not within the protected area merely because an unlawful conspiracy has caused injury to the corporation. Campo v. National Football League, 334 F.Supp. 1181 (E.D.La.1971); Ash v. International Business Machines, Inc., 353 F.2d 491 (3d Cir. 1965); Former Stockholders of Barr Rubber Products Co. v. McNeil Corp., 325 F.Supp. 917 (N.D.Ohio 1970), aff'd mem., 441 F.2d 1169 (6th Cir. 1971). Neither is a creditor suing to recover damages to his debtor's business within the antitrust laws' area of protection. Walder v. Paramount Publix Corp., 132 F.Supp. 912 (S.D.N.Y.1955).

Standing to sue by employees presents yet another class seeking relief under Clayton Act, §§ 4 and 16. Appellant contends he satisfies the directness test propounded in Nationwide Auto Appraiser Serv. v. Association of C. & S. Co., supra. He was employed by Sinclair for 17 years. He was not fired because of inability to handle the job, but as a result of an unlawful merger. For every wrong there should be a remedy; Clayton Act, §§ 4 and 16 provide this remedy to employees discharged by an alleged illicit merger.

Appellant states that employees have standing because employment is business or property as defined in Clayton Act, § 4. Supporting this assertion he cites Hawaii v. Standard Oil Company of California, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). This case concerns the state's right to sue a party for antitrust violations under the *parens patriae* theory. Although the Supreme Court holds that Section 4 of the Clayton Act does not authorize a state to sue for in-

---

[1]. Clayton Act, § 4 provides: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore . . . and shall recover threefold the damages by him sustained. . . ."

Clayton Act, § 16 provides: "Any person . . . shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws. . . ."

jury to its general economy resulting from alleged antitrust violations, the Court approves a definition of "business or property" enunciated in Roseland v. Phister Manufacturing Co., 125 F.2d 417 7th Cir. 1942). Business or property is defined in Roseland as "employment or occupation in which a person is engaged to procure a living." Roseland v. Phister Mfg. Co., supra at 419.

Roseland concerns antitrust violations by three corporations engaged in manufacturing and selling fire prevention equipment and fire extinguishers. Plaintiff was a salesman for one of the defendant companies working on a commission basis. The three defendant companies combined their activities for the purpose of, inter alia, suppressing competition in interstate commerce, conspiring to monopolize the commerce, eliminating fair and lawful competition, and dividing customers and purchasers. Plaintiff was accorded standing because his work was that of a sales agent possessing an exclusive territory of several states with an established clientele. Such employees fall within the definition of business or property. More recent cases supporting this view include Dailey v. Quality School Plan, Inc., 380 F.2d 484 (5th Cir. 1967) (area supervisor of magazine subscription company injured in his business or property by a prohibited corporate acquisition); and Nichols v. Spencer International Press, Inc., 371 F.2d 332 (7th Cir. 1967) (no-switching agreement by which each publisher agrees not to employ a former employee of the other until six months after termination of former employment constitutes injury to employee in his business or property).

We are not in disagreement with the above cited cases; however, we do not believe they are applicable to the situation here. The Supreme Court in Hawaii was concerned with the state's standing to sue for injuries to its general economy resulting from antitrust violations. Although approving the standing definition in Roseland, we do not feel the Court expanded the definition to include situations factually different from that in Roseland. In both Roseland, supra, and Dailey, supra, the employees worked on a commission basis. They in essence were quasi-businessmen operating in a market carved out by their own aggressiveness and salesmanship qualities. Thus when their employers engaged in anti-competitive practices, the employees were directly injured by these violations.

■■ For appellant to satisfy the business or property prerequisite, he must demonstrate that his job is a commercial venture or enterprise. Broadcasters, Inc. v. Morristown Broadcasting Corp., 185 F.Supp. 641, 644 (D.C.N.J. 1960); see also Peller v. International Boxing Club, 227 F.2d 593 (7th Cir. 1955); Brownlee v. Malco Theatres, 99 F.Supp. 312 (W.D.Ark.1951). Appellant did not operate out of a specific market nor did his job compel establishing a clientele. In no way could his job be construed as a venture or enterprise within the market area endangered by the merger.

Appellant asserts that standing has been granted employees in numerous cases. The Nichols v. Spencer International Press, Inc., supra, case allowed an employee standing to attack anti-competitive practices by his employers. In Radovich v. National Football League, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957), plaintiff sued for treble damages and injunctive relief under Clayton Act, § 4. Plaintiff contended there was a conspiracy by the National Football League, the effect of which was to prevent his employment in organized football. The Supreme Court determined that if plaintiff has suffered injury and satisfies the test under the Sherman Act's general prohibition of unreasonable restraints of trade, then his pleadings are sufficient to satisfy the jurisdictional requisites. See also Flood v. Kuhn, 443 F.2d 264 (2d Cir. 1971), aff'd 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed. 2d 728 (1972). Once again these cases are inapposite. Each case alleges antitrust violations directed against the

blackballed party. Appellant Reibert is not faced with a similar problem. If there is any antitrust violation, it is directed toward the petroleum industry. Appellant is not among those (the buyers and sellers constituting the market) engaged in the sort of legitimate activities which the prohibition of this type of violation was clearly intended to protect. Billy Baxter, Inc. v. Coca-Cola Co., supra.

Antitrust violations admittedly create foreseeable ripples of injury to individual stockholders, consumers and employees, but the law has not allowed all of these standing to sue for treble damages. Billy Baxter v. Coca-Cola Co., supra. The aggrieved party must satisfy the "by reason of" and/or "by" requirements found in Sections 4 and 16 of the Clayton Act, respectively. This prerequisite boils down to complainant proving that the antitrust violations are the proximate cause of his injury. Two elements are necessary to demonstrate proximate cause: (1) there is a causal connection between an antitrust violation and an injury sufficient to establish the violation as a substantial factor in the occurrence of damage; and (2) that the illegal act is linked to a plaintiff engaged in activities intended to be protected by the antitrust laws. Billy Baxter, Inc. v. Coca-Cola Co., supra. Appellant fails to satisfy either requirement. The first element, causal connection between violation and injury, is lacking because appellant cannot show that any antitrust violations directly injured him. He has suffered no direct injury as a result of the prohibited lessening of competition. Conference of Studio Unions v. Loew's, Inc., 193 F.2d 51 (9th Cir. 1951), cert. denied, 342 U.S. 919, 72 S. Ct. 367, 96 L.Ed. 687 (1952); Peterson v. Borden Co., 50 F.2d 644 (7th Cir. 1931); Rayco Mfg. Co. v. Dunn, 234 F. Supp. 593 (N.D.Ill.1964). In Peterson v. Borden Co., supra, stockholders were allegedly fraudulently induced to sell their stocks to majority stockholders for less than its value. Subsequently the majority stockholders sold the entire assets to a corporate competitor. The minority stockholders sued to recover damages for injury to their property caused by alleged violations of the antitrust laws resulting from the sale of stock by majority stockholders to a competitor. The court denied recovery because a stockholder of an absorbed corporation who parts with his stock for less than its actual cash value cannot attribute his loss to substantial lessening of competition or creation of a monopoly. Any injury sustained is through fraud by majority stockholders, not lessening of competition.

In another case concerning the causal relationship between antitrust violations and injury, a franchisee sued B. F. Goodrich for acquiring all of franchiser's stock, thereby creating a monopoly in violation of Section 7 of the Clayton Act. Franchisee alleged that by the illegal acquisition, he was prevented from purchasing merchandise from competing suppliers. The court denied him standing because he was unable to relate the injury to a lessening of competition or monopoly. Although a competitor of the acquiring or acquired corporation might have standing to bring such an action, the franchisee was neither foreclosed from selling to the franchiser nor was he a customer foreclosed from receiving an adequate supply of merchandise. Rayco Mfg. Co. v. Dunn, supra.

Appellant in the instant case is confronted with the same problem. If there has been a wrong, appellant cannot show that it results from the lessening of competition. Termination of employment will often occur whether a merger is legal or illegal. It is the natural effect flowing from two similarly structured businesses combining their assets to maximize efficiency. As was summed up in Conference of Studio Unions v. Loew's, Inc., supra, "the loss of their rights of employment is not a result of any lessening of commercial competition. . . ." See also Schatte v. International Alliance of Theatrical Stage Employees, 182 F.2d 158 (9th Cir. 1950).

Salaried employees stand on no better grounds with the second proximate cause requirement since they are not within the area of competitive economy protected against unlawful mergers. In Conference of Studio Unions v. Loew's, Inc., supra, employees sought treble damages and injunctive relief on the theory they had lost employment as a result of a conspiracy in restraint of trade in which their employers participated. The defendants were major motion picture studios who were attempting to drive independent motion picture studios out of business. The court determined that employees must show that more than one purpose of the conspiracy was a restraint of trade, and that an act was committed which harms them. They must show they are "within that area of the economy which is endangered by a breakdown of competitive conditions in a particular industry." *Id.*, 193 F.2d 55.

Our court had occasion to determine the proximity necessary for standing to sue in Nationwide Auto Appraiser Serv. v. Association of C. & S. Co., supra. Appellant corporation in that case was organized to sell exclusive territorial franchises to independent businessmen engaged in appraising automobile damage. This corporation provided its franchise holders with business advise and advertising. The appellees were associations whose members were insurance companies. Appellant argued the appellees influenced their members to sponsor one appraiser to handle all their appraisal business. The result was alleged to be an unreasonable restraint on trade resulting in substantial injury to appellant and its franchisees. The court held appellant's damages resulting from defendants' acts were too remote or indirect to allow recovery.

■ Appellant Reibert's injuries were also too indirect to allow standing. The Sherman Act was enacted to prevent restraint of trade having a significant effect on "business competition." Apex Hosiery Co. v. Leader, 310 U.S. 469, 492–493, 60 S.Ct. 982, 84 L.Ed. 1311 (1940). The Supreme Court felt Section 7, as amended by the Celler-Kefauver bill in 1950, also was enacted to protect competition. Brown Shoe Co. v. United States, 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962). Appellant's termination of employment does not affect the area legislatively protected. At best, appellant's discharge was no more than an outgrowth of the alleged unlawful merger. He has failed to show the necessary directness of injury caused by the illicit acts. Appellant is not in the area of economy endangered by a breakdown of competitive conditions, and thus lacks standing to sue.

Appellants cite Wilson v. Ringsby Truck Lines, Inc., 320 F.Supp. 699 (D. C.Colo.1970), as authority. This case appears to be in point. Defendant Ringsby was a common carrier transporting goods in Colorado and Wyoming. Plaintiffs were employees of Ringsby who worked as truck drivers and warehousemen. Plaintiffs alleged defendant Ringsby and other common carriers illegally conspired to divide up and control the business between Colorado and Wyoming. The result caused a reduction in wages and other compensation to plaintiffs. Defendant argued, inter alia, lack of standing by plaintiffs-employees. This motion was denied. The trial court's reasoning stemmed from the Clayton Act, § 4 language itself: "*Any* person who shall be injured in his business or property. . . ." (Emphasis added.) Pointing to the confusion arising from the various interpretations of Clayton Act, § 4, the trial court determined the statute's best interpretation was a liberal one. The court distinguished Nationwide Auto Appraiser Serv. v. Association of C. & S. Co., supra, by viewing the special relationships between the parties. In Nationwide, plaintiff-franchiser was incidentally affected by defendants' attack against franchise holders. In Wilson, the contractual relationship between employer and employee is as proximate as that found in landlord-tenant cases, in which standing has been upheld. E. g., Congress Building Corp. v. Loew's, Inc., 246 F.2d 587 (7th Cir. 1957). With all due respect to the trial court's position, we do

not feel the weight of authority is on his side. *See* Billy Baxter, Inc. v. Coca-Cola, Co., supra; Calderone Enter. Corp. v. United Artists Theatre Cir., supra; Centanni v. T. Smith & Son, Inc., 216 F.Supp. 330 (E.D.La.1963), aff'd 323 F.2d 363 (5th Cir.); Conference of Studio Unions v. Loew's, Inc. supra; Martens v. Barrett, 245 F.2d 844 (5th Cir. 1957); Westmoreland Asbestos Co. v. Johns-Manville Corp., 30 F.Supp. 389 (S.D.N.Y.1939), aff'd mem., 113 F.2d 114 (2d Cir. 1940); Loeb v. Eastman Kodak Co., 183 F. 704 (3d Cir. 1910); Gerli v. Silk Ass'n of America, 36 F.2d 959 (S.D.N.Y.1929); Corey v. Boston Ice Co., 207 F. 465 (D.C.Mass.1913); Deaktor v. Fox Grocery Co., 332 F.Supp. 536 (W.D.Pa.1971); Sargent v. National Broadcasting Co., 136 F.Supp. 560 (N.D.Cal.1955); Walder v. Paramount Publix Corp., supra.

As our court has stated, the "directness rule" appears to be a practical application of the Clayton Act. If the test is outmoded, Congress would have so indicated. In view of the lapse of time without legislative changes, we must assume the rule accords with the intent of Congress. Nationwide Auto Appraiser Serv. v. Association of C. & S. Co., supra.

Affirmed.